CHOATE

v.

**TRANSPORT LOGISTICS CORP.**

**No. 3:01cv1505 (JBA).**

United States District Court, D. Connecticut.

Dec. 30, 2002.

**RULING ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
[DOC. # 17]**

ARTERTON, District Judge.

Plaintiff Lancin F. Choate, formerly employed as a dispatcher by defendant Transport Logistics Corporation ("Transport"), brings this suit alleging that defendant discharged him in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634, and for various violations of state statutory and common law. Defendant now moves for summary judgment on Mr. Choate's claim of discriminatory discharge under the ADEA on the grounds that plaintiff has failed both to establish a prima facie case and to demonstrate that his employer's reasons for discharging him were a pretext for age discrimination. For the reasons set forth below, defendant's motion [doc. # 17] is GRANTED and supplemental jurisdiction over plaintiff's state law claims is declined.

## I. Factual Background

Transport was founded in 1995 by its current president Ronald Gaudet with one employee, and grew in size through 1999 before declining to forty-four employees in mid–2002.[1] Defendant is in the business of hauling freight and generally employs two types of personnel: drivers and dispatchers. For employment of dispatchers (the position plaintiff occupied), both Ronald Gaudet and his brother Gary handle the hiring with Ronald making the final decisions.

In July of 1999, after two interviews with Gary Gaudet, plaintiff Choate accepted a salaried dispatcher position with Transport at an annual salary of approximately $37,000. Mr. Choate was then 59 years old. At the time of his hire, Mr. Choate was one of seven full time dispatchers and one part-timer, all of whom worked under Gary Gaudet's supervision.

---

1. Ronald Gaudet's undisputed deposition testimony on the overall growth and decline of Transport's workforce is vague. Although he unequivocally stated that he started the company with one other employee and that in mid–2002 the company had forty-four, *see* Dep. of Ronald Gaudet at 6:10–14, he was only able to say that there were not more than one-hundred and "could have been" more than forty-four employees in 1999, and that, from 1999 to mid–2002, Transport "probably decreased by I'm guessing 15 employees." *Id.* at 6:15–20, and 52:1–4.

On August 14, 2000, at the request of Mr. Choate, Gary Gaudet conducted plaintiff's first performance review covering Mr. Choate's employment from his July 1999 date of hire to the date of the review. The review is memorialized in a document entitled "Hourly Employee Performance Review" ("Hourly Review") and dated August 14, 2000. Although there is some dispute about the exact conclusion to be drawn from the review, properly calculated, Gary Gaudet rated Mr. Choate's performance at a 61, a rating falling within the overall evaluation of "meets standards (60–70)."[2] The Hourly Review contained Gary Gaudet's written comments, including "You need to work on focusing," "Lenny makes mistakes," "needs help on all functions of work," and "has been here for two (sic) years having problem still."

Defendant claims Mr. Choate received performance warnings on four occasions between September and November 2000. Transport proffers two "employee warning records", one dated September 8, 2000 and one dated November 9, 2000, that purport to detail Mr. Choate's failure to input data into and remove data from Transport's computer system. However, both documents are unsigned and do not reveal who prepared them. Further, plaintiff vigorously maintains that he first saw both documents only after he was terminated and received them from the Connecticut Commission on Human Rights (CHRO) in connection with his administrative complaint.

At some point between August 2000 and Mr. Choate's termination, Ronald Gaudet also told plaintiff that both he and Gary felt Mr. Choate's job performance was not up to par. In the latter half of November of 2000, Gary Gaudet asked Mr. Choate to transfer to a third shift position because plaintiff was making mistakes on the shift he worked on, explaining that the third shift would be less demanding and easier for Mr. Choate because there were less drivers needing attention. Mr. Choate declined this request in deference to his wife's preference not to be left alone at night.

In early December, after a series of discussions between Ronald and Gary Gaudet over Mr. Choate's employment, Ronald instructed Gary to terminate Mr. Choate and told him the specific date for the termination. On December 18, 2000, Gary Gaudet took Mr. Choate into a conference room, gave him a pink termination slip signed by Ronald Gaudet, and stated that Mr. Choate was being terminated due to downsizing and, according to Gary Gaudet, poor job performance. Mr. Choate was 60 years old.

From the day Mr. Choate was terminated to February 28, 2002, defendant continued to employ seven full time dispatchers and one part time dispatcher, with the exception of a nineteen day period in June of 2001, during which Transport had eight dispatchers.

## II. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The Court must draw all reasonable inferences in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), mindful that "[c]redibility de-

---

**2.** Apparently due to the miscalculation of his total score as 59, Mr. Choate never actually received the 3% raise to which a "meets standards" score entitled its recipient.

terminations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading." Fed.R.Civ.P. 56(e); *see also Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)(Object of Rule 56(e) "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

Although caution must be exercised before granting summary judgment to an employer in an ADEA case where discriminatory intent and state of mind are in dispute, *see Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 134 (2d Cir.2000),

> '[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases. This Court has stated that: 'the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to ... other areas of litigation.'

*Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001)(*citing Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985)); *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)("[T]rial courts should not treat discrimination differently from other ultimate questions of fact.")(quotation omitted). In fact, the Second Circuit has recently and repeatedly affirmed grants of summary judgment in ADEA discharge cases in favor of the employer on the grounds that the record evidence was insufficient for a jury to find that the real reason behind the employee's termination was age. *See e.g., Slattery v.*

*Swiss Reins. Am. Corp.,* 248 F.3d 87 (2d Cir.2001); *James v. New York Racing Ass'n,* 233 F.3d 149 (2d Cir.2000); *Schnabel v. Abramson,* 232 F.3d 83 (2d Cir.2000); *see also Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 170–71 (2d Cir.2001).

## III. ADEA and Burden Shifting Analysis

ADEA provides in pertinent part,

> It shall be unlawful for an employer ... to discharge any individual ... because of such individual's age.

29 U.S.C. § 623(a)(1). ADEA's prohibition against age based discharge protects employees who are at least 40 years of age. *See id.* at § 631(a).

The Second Circuit analyzes ADEA claims under the familiar burden shifting framework first set out by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) in the context of claims brought under Title VII of the Civil Rights Act of 1964. *See Abdu–Brisson,* 239 F.3d at 466. Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of age discrimination. *See Carlton,* 202 F.3d at 134; *Schnabel,* 232 F.3d at 87. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Slattery,* 248 F.3d at 91; *Schnabel,* 232 F.3d at 87. If the employer provides such a reason, "the final burden rests on the plaintiff to prove not only that the proffered nondiscriminatory reason was pretextual but also that the defendant discriminated against the plaintiff." *Slattery,* 248 F.3d at 91.

### A. Prima Facie Case

■ To establish a prima facie case of discriminatory discharge under ADEA, the plaintiff must show that "(1) at the time of discharge she was at least 40 years of age,

(2) her job performance was satisfactory,[3] (3) she was discharged, and (4) her discharge occurred under circumstances giving rise to an inference of discrimination on the basis of age." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 559 (2d Cir.1997). "The burden of establishing a *prima facie* case is not a heavy one. One might characterize it as minimal." *Carlton*, 202 F.3d at 134.

Defendant's motion challenged only plaintiff's ability to establish a prima facie case but its reply memorandum set forth its claim of legitimate nondiscriminatory reasons for plaintiff's discharge and argued that plaintiff also failed as a matter of law to proffer rebutting evidence sufficient for trial. As confirmed at oral argument, plaintiff's opposition included all his evidence which would be used at trial in support of his claim of discriminatory discharge under the ADEA, including that which he claims permits the inference that defendant's reasons for discharge are a pretext for age discrimination. Because the Court agrees that, as a matter of law, plaintiff cannot meet its ultimate burden under the *McDonnell Douglas* burden shifting analysis of proving that defendant intentionally discriminated against plaintiff on the basis of his age, it does not reach whether but rather assumes, arguendo, that plaintiff has satisfied his de minimums burden to establish a prima facie case. *See Roge*, 257 F.3d at 168; *Slattery*, 248 F.3d at 93.

**B. Legitimate Reasons for Discharge**

■ Defendant has satisfied its burden to articulate legitimate, non-discriminatory rationales for Mr. Choate's discharge, which is "one of production, not persuasion[,] . . . involv[ing] no credibility assessment," *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097, and is satisfied if the proffered evidence " 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.' " *Schnabel*, 232 F.3d at 88 (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).[4]

The reasons offered by Transport are 1) downsizing and 2) deficient job performance. The proffered rationale of downsizing finds support in the fact that Trans-

**3.** This element is alternatively formulated as "qualified for the job." *Slattery*, 248 F.3d at 91 (*citing Carlton*, 202 F.3d at 134). The Second Circuit panel in *Slattery* has held that the variation in terminology does not alter plaintiff's burden under element two, and that plaintiff's burden is an objective one requiring "plaintiff [to] show only that 'he possesses the basic skills necessary for performance of [the] job,' " *id.* at 92 (*citing Owens v. New York City Hous. Auth.*, 934 F.2d 405, 409 (2d Cir.1991)), that is, to "establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." *Id.* This objective interpretation of *Slattery* appears at odds with the subjective one in *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26 (2d Cir.1997), which requires a showing that, at the time of discharge, plaintiff was meeting the employer's legitimate and honestly held expectations. *See id.* at 29. Notably, the *Slattery* panel did not mention *Thornley*, but cited *Owens v. New York City Hous. Auth.*, the same case that the *Thornley* panel thoroughly discussed and construed as directing a subjective approach. *See id.* at 30 ("*Owens* did not depart from our holdings that a plaintiff complaining of discriminatory discharge shows 'qualification' by demonstrating *satisfactory job performance*, in accordance with the particular employer's criteria for satisfactory performance.").

**4.** At this stage in the analytical framework of *McDonnell Douglas*, it is important to keep in mind that "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (quotation omitted); *see Schnabel*, 232 F.3d at 88 n. 2.

port's dispatching unit remained the same size after Mr. Choate's discharge until February 2002, and, as will be detailed below, the absence of evidence that anyone was hired to replace Mr. Choate or that any co-workers took over or assumed plaintiff's duties after he was discharged.

Mr. Choate's performance deficiencies are documented by the negative comments in plaintiff's Hourly Review and Mr. Choate's deposition testimony that, in the period intervening between the Hourly Review and his termination: 1) Ronald Gaudet told plaintiff that both he and Gary Gaudet considered that Mr. Choate's performance was not up to par; and 2) because of Mr. Choate's repeated errors, Gary Gaudet asked plaintiff to transfer to the third shift as less demanding and therefore easier for Mr. Choate to handle.

## C. Evidence That Age was Real Reason for Discharge

Defendant having produced age-neutral reasons for plaintiff's discharge, to defeat summary judgment, plaintiff must " 'present evidence from which a fact-finder could reasonably conclude that the [employer's] reasons [were] pretextual and the real reason was discrimination.' " *Roge*, 257 F.3d at 169 (*quoting Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 317 (2d Cir.1999)); *see also Grady*, 130 F.3d at 559–60. Although "direct evidence of discrimination is not necessary," *Carlton*, 202 F.3d at 135, "an employer [is] entitled to judgment as a matter of law if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097.

## 1. Same Actor Inference

 In cases where the hiring and firing decision maker is the same person, a "same actor inference" applies, *see Carlton*, 202 F.3d at 132 and 137–38, and is "a highly relevant factor in adjudicating a motion for summary judgment on an ADEA claim." *Schnabel*, 232 F.3d at 91. "The premise underlying this inference is that if the person who fires an employee is the same person that hired him, one cannot logically impute to that person an invidious intent to discriminate against that employee." *Carlton*, 202 F.3d at 132; *see also Grady*, 130 F.3d at 560. The same actor inference applies with greatest force where the act of hiring and firing are not significantly separated in time. Conversely, when a longer period of time elapses between the hiring and firing, the inference is "less compelling" and "significantly weaken[ed]". *Carlton*, 202 F.3d at 138 (seven year time lapse).

Defendant urges that it is entitled to the strong inference that discrimination was not a motivating factor in Mr. Choate's termination because the same person or persons both hired plaintiff at age 59 and roughly eighteen months later fired him at age 60. Plaintiff contends that the same actor inference does not apply because the eighteen month gap between hiring and firing renders the inference weak and inapplicable, and because plaintiff was not hired and fired by the same person or persons but rather was hired solely by Gary Gaudet and fired solely by Ronald Gaudet.

Plaintiff's first argument fails as a matter of law because, although the same actor inference is "less compelling when a significant period of time elapses between the hiring and firing," *see Carlton*, 202 F.3d at 138, the Second Circuit has applied the inference even where the hiring and

firing occurred three years apart. *See Schnabel*, 232 F.3d at 91.

The basis for plaintiff's claim that he was hired solely by Gary Gaudet appears to conflate the act of hiring with the act of interviewing. Thus, plaintiff claims that he "has personal knowledge that [he] was interviewed by Gary Gaudet twice before [he] was hired ... that [he] was hired by Gary Gaudet ... that [he] was not interviewed by Ron Gaudet and [he] was not hired by Ron Gaudet." Pl.'s Aff. ¶¶ 3–5. As a basis for his personal knowledge, Mr. Choate points to his own deposition in which he made almost exactly equivalent statements.

Plaintiff's view of hiring is incomplete. Application of the same actor inference is not necessarily determined by who did or did not conduct a hiring interview. The undisputed facts of record reveal that 1) Gary and Ronald Gaudet jointly handle the responsibility for the process of hiring dispatchers but Ronald Gaudet makes the ultimate hiring decisions; 2) both Gary and Ronald Gaudet were involved in hiring Mr. Choate—Ronald Gaudet left a telephone message for Mr. Choate to come to Transport for an interview which was held with Gary Gaudet; and 3) at the time Mr. Choate was hired, Transport had seven full-time dispatchers and one part-timer.

Plaintiff has offered no basis for his assertion that he has personal knowledge that he was not hired by Ronald Gaudet other than his knowledge that Ronald did not interview him. While Mr. Choate has personal knowledge of who conducted his interviews, he has provided nothing explaining or demonstrating the nature and basis of his claimed personal knowledge of

who made the decision to hire him. His allegation that Gary hired him is not, as required of affidavits in support of summary judgment, shown to be based on personal knowledge, and must be disregarded as unsupported and conclusory.[5]

Thus, from the undisputed record evidence, a rational fact finder could draw only one conclusion, namely, that Ronald Gaudet, the president and founder of a modest size business of no more than 100 employees made the decision to hire Mr. Choate for a position in the 7.5 person dispatching department with input or recommendation from Gary Gaudet, Mr. Choate's future supervisor.

Plaintiff acknowledges that Ronald Gaudet made the ultimate decision to fire him. *See* Pl.'s Mem. in Opp'n at 10. In addition, the undisputed record reveals that, although both Ronald and Gary Gaudet discussed plaintiff's employment status, ultimately Ronald Gaudet had the final say on continuation of Mr. Choate's employment.

It having been shown undisputed that Ronald was responsible for both the hiring and firing decisions, because imputing to Ronald Gaudet an invidious motive underlying his firing plaintiff at age 60 would be inconsistent with his decision to hire him at age 59, defendant is entitled to a strong inference that age discrimination was not a motivating factor in Ronald's decision to terminate Mr. Choate. *See Carlton*, 202 F.3d at 137.

## 2. Pretext

In support of his claim that one of defendant's grounds for firing plaintiff, unsatisfactory job performance, was pretex-

---

**5.** This conclusion would be different if, for example, Mr. Choate stated that, at the conclusion of his interviews, Gary Gaudet offered him the job on the spot, or if, at some time during his employment with Transport, plain-

tiff became aware of circumstances from which it could be inferred that Ronald Gaudet actually was uninvolved with the decision to hire plaintiff, or simply rubber stamped Gary Gaudet's decision.

tual, plaintiff offers his Hourly Review as demonstrating that his job performance was satisfactory, characterizes the pretermination "warnings" as mere work corrections, points to ways in which the termination process was counter to Transport's standard disciplinary practice, and denies that Gary Gaudet ever told him he was being terminated for poor job performance.

Drawing all inferences in favor of plaintiff, there is sufficient evidence from which a reasonable jury could find that defendant's stated reason for firing plaintiff for poor job performance was pretextual. Just four months prior to termination, plaintiff had technically achieved an overall score of 61, a score classified just within the "meets standards" range. The "employee warning records" supplied by Transport in support of its motion are of questionable origin. Both are unsigned and fail to identify their preparer. The warning dated November 9, 2000, refers to other warnings dated September 14, 2000, and November 8, 2000, but defendant never produced any documentation of those warnings. Mr. Choate urges that, because he never saw any written warnings prior to receiving them from the CHRO and was not told he was being terminated for poor job performance, defendant's "warnings" were created as post hoc substantiation for his discharge. Finally, although Transport had no formal written disciplinary procedure during the period of Mr. Choate's employment, its informal policy called for a verbal warning followed by approximately four successive written warnings before termination. Thus, a jury could reasonably conclude that defendant's reason for discharge—poor job performance—was untrue by concluding that Mr.

Choate was satisfactorily performing at Transport, never received any written warnings regarding his job performance, and was terminated contrary to defendant's usual procedures.

However, when considered in light of the negative performance comments in the Hourly Review, Ronald Gaudet's post-review comments to Mr. Choate that his performance was sub-par, and Gary Gaudet's efforts to deal with Mr. Choate's performance difficulties by transferring him to another shift, the evidence of pretext with respect to job performance at best "create[s] only a weak issue of fact as to whether the employer's reason was untrue." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097.

Plaintiff also disputes the downsizing reason for termination, pointing for support to: 1) plaintiff's termination juxtaposed to the retention of Jason Oliveira and Michael Slater, two younger dispatchers with less seniority, and, according to plaintiff, their subsequent assumption of his duties and functions; and 2) the advertising of a part-time dispatching position in the "TLC Gazette" [6] after plaintiff's termination.

Plaintiff points to no evidence in support of his belief that Jason Oliveira or Michael Slater assumed any of Mr. Choate's job responsibilities or functions. Plaintiff either admitted or his submissions reveal that: 1) plaintiff does not know whether his duties had been transferred to either of these employees; 2) plaintiff has no personal knowledge regarding either's job performance; and 3) plaintiff does not know through any source whether anyone was hired to replace him.[7] Gary Gaudet's

---

6. This is apparently an internal publication of defendant.

7. Mr. Choate's affidavit that he has personal knowledge that Jason Oliveira replaced him cannot create a material issue of fact because it contradicts without explanation his prior

deposition testimony that no one was hired to replace Mr. Choate is thus uncontradicted, and there remains no evidence that Mr. Choate's duties were transferred in whole or part to his younger, less senior co-workers Slater or Oliveira.

Plaintiff maintains that his position "remained open and [Transport] continued to seek applicants from persons of [plaintiff's] qualifications," *Meiri*, 759 F.2d at 995, as reflected by the announcement in the TLC Gazette. The announcement appeared on both December 28, 2000 and January 11, 2001, and advertised:

> TLC is looking for someone to fill a part time dispatch position. We need someone in dispatch every other weekend, and whenever a fulltime dispatcher is on vacation or out sick. Anyone interested is to contact Gary at extension 101.

On its face, the announcement advertises a part-time weekend and fill-in position, not the full time position that Mr. Choate occupied. There is no suggestion that Transport sought to transfer any of the duties Mr. Choate handled on a full time basis to a person who would only work once every two weeks. In addition, since there is no evidence that any of Mr. Choate's duties or responsibilities were transferred to any co-worker, no reasonable jury could conclude that a fill-in for those co-workers would do anything more than take over the duties of the absent worker. Accordingly, plaintiff has failed to cast doubt on defendant's articulated rationale of downsizing.

### 3. Pretext for Age Discrimination

Even if a jury might conclude that defendant's articulated rationale of poor job performance was false, Mr. Choate "has not demonstrated that the asserted pretextual reason[ ] w[as] intended to mask age discrimination." *Schnabel*, 232 F.3d at 88. The Supreme Court's decision in *Reeves* mandates a case-by-case evaluation of the entire record "to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel*, 232 F.3d at 90–91 (*quoting Reeves*, 530 U.S. at 143, 120 S.Ct. 2097). Even where plaintiff's evidence establishes a de minimis prima facie case and demonstrates some pretext, an employer may still be entitled to summary judgment if such evidence by itself or coupled with any additional evidence offered by plaintiff could not reasonably support an inference of age discriminatory intent. *See Schnabel*, 232 F.3d at 90–91; *Slattery*, 248 F.3d at 93–94; *James*, 233 F.3d at 153–57.

In addition to his evidence of pretext discussed above, plaintiff supports his claim that age was an impermissible termination factor by pointing to Gary Gaudet's "several comments to the plaintiff in front of the other employees that the plaintiff needed a hearing aid." Pl.'s Mem. in Opp'n at 9.

Mr. Choate's representations about Gary Gaudet's remarks about hearing are imprecise and vague.[8] It is not clear

deposition testimony that he did not know about any replacement. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 (2d Cir.1999).

**8.** The full excerpt of Mr. Choate's deposition testimony reads as follows,

> Q: .... Was there any harassing or intimidation occurring in your mind regarding your age?

> A: There could have been a few times where some things were said that, which Gary had said to me that he'd have to ask the question twice because I was on the telephone, and I was just getting off. When you're on the telephone and trying to direct people and you get off the phone, he sort of implies, you know, do you need a hearing aid?
> Q: You thought that was-

whether Gary Gaudet is alleged to have made several comments or one, *see* Pl.'s Dep. At 77:16–17 ("There could have been a few times where some things were said ..."), or whether the comment or comments were age-related or merely observations on what plaintiff claims was his problem in attempting simultaneously to attend to a telephone call and to take instructions from another person. *Compare* Pl.'s Dep. at 77:17–19 ("...Gary had said to me that he'd have to ask the question twice because I was on the telephone, and I was just getting off...") *with* Pl.'s Dep. at 78:4–7 (Q: "Did he actually say 'do you need a hearing aid?' A: It was something of that fashion, as if you can't hear?..."). Mr. Choate interpreted the comments to mean, "When you're on the telephone and trying to direct people and you get off the phone, he sort of *implies*, you know, do you need a *hearing aid?*", Pl.'s Dep. at 77:19–22 (emphasis added), a medical device he presumably implies is associated primarily with use by the elderly. Thus, the strongest inference in plaintiff's favor that can be drawn from this testimony is that Gary Gaudet said something that may vaguely have implicated plaintiff's age. The Second Circuit has concluded that more explicit remarks do not establish the inference of discrimination element of a prima facie case, *see Carlton*, 202 F.3d at 136 (suggestion of president and sole shareholder, who hired and terminated plaintiff, that plaintiff should "retire" supported but did not establish by itself ele-

ment four of plaintiff's prima facie case). Gary's remarks about hearing assume even less significance because Mr. Choate does not attribute age animus to Gary Gaudet but rather to Ronald Gaudet as the discharge decision maker.

In contrast to plaintiff's weak evidence of pretext and age-related comments, any reasonable inference of age discrimination is decisively undercut by the "abundant and uncontroverted independent evidence that no discrimination had occurred," *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097, namely, the same actor made both the hiring and firing decision within 18 months, Transport made remedial, but rebuffed efforts to transfer plaintiff to the third shift shortly before his termination,[9] and Transport never replaced plaintiff or transferred his duties to others. Accordingly, as no reasonable jury could find plaintiff's evidence sufficient to support a verdict in his favor, defendant is entitled to summary judgment.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [doc. # 17] on Mr. Choate's claim of discriminatory discharge under ADEA is GRANTED. Inasmuch as Mr. Choate's ADEA claim was the only claim over which the Court had original jurisdiction, this Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over plaintiff's remaining state statutory and

A: Harassment.
Q: Regarding your age?
A: Yeah.
Q: Any other incidents that you can recall?
A: No.
Q: Did he actually say "do you need a hearing aid?"
A: It was something of that fashion, as if you can't hear? You know, it was in front of everybody, so therefore—

Q: It was embarrassing?
A: Yes, it was.
Pl.'s Dep. at 77:13–78:10.

9. There is no suggestion that defendant's offer was disingenuous or made with knowledge that Mr. Choate could not or would not accept.

common law claims and they are dismissed without prejudice.

The Clerk is directed to close this case.

IT IS SO ORDERED.