James TAYLOR, Plaintiff,

v.

**LOCAL 32E SERVICE EMPLOYEES INTERNATIONAL UNION,**
Defendant.

**No. 01 CIV. 9106(WCC).**

United States District Court,
S.D. New York.

Sept. 30, 2003.

Law Offices of Leonard Buddington, Jr., Yonkers, NY (Leonard Buddington, Jr., of Counsel), for plaintiff.

Office of General Counsel Service Employees International Union Local 32BJ, AFL–CIO, New York City (Jodi P. Goldman, Associate General Counsel, of Counsel), for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff James Taylor brought this action against Service Employees International Union Local 32E ("Local 32E") alleging that he was terminated from his employment with Local 32E because of his race in violation of Title VII of the Civil Rights Act of 1964. Local 32E now brings this motion for summary judgment. For the reasons stated below, the motion is granted.

## BACKGROUND [1]

Taylor, an African–American male, commenced employment with Local 32E in December of 1994 as a business representative. (Pl. Rule 56.1 Stmt. ¶¶ 1, 2; Def. Rule 56.1 Stmt. ¶ 1.) During his employment with Local 32E, Taylor was also employed as a senior pastor by the First Baptist Church in Mamaroneck, New York. (Pl. Rule 56.1 Stmt. ¶ 4; Def. Rule 56.1 Stmt. ¶ 3.) In February 1999, Taylor was nominated to complete the unexpired term of Local 32E Vice President Scott

---

**1.** Defendant contends that this Court should disregard plaintiff's Rule 56.1 Statement, as the assertions therein are not supported by citations to the record. Although failure to comply with Local Rule 56.1 is grounds for deeming admitted the facts contained in defendant's Rule 56.1 Statement, we are not required to do so. *See Balut v. Loral Electronic Sys.,* 988 F.Supp. 339, 343 (S.D.N.Y. 1997) (Conner, J.), *aff'd,* 166 F.3d 1199, 1998 WL 887194 (2d Cir.1998). Because we find support for plaintiff's assertions in plaintiff's sworn affidavit, we decline to disregard plaintiff's Rule 56.1 Statement. Any statements without support will be identified as such.

Trivella in the New Rochelle office, and was responsible for commercial matters and negotiating collective bargaining agreements within the Westchester and Connecticut area. (Pl. Rule 56.1 Stmt. ¶ 6.) On December 5, 2000, Local 32E was placed under trusteeship by the Service Employees International Union ("International") due to serious concerns about Local 32E's leadership and operations. (Def. Rule 56.1 Stmt. ¶ 8; Doyle Aff. ¶ 12; Goldman Aff., Ex. I at 14–15.) As a result of the trusteeship, officers were removed from their elected offices, including Taylor, who continued to be employed as a business agent for Local 32E in the New Rochelle office. (Pl. Rule 56.1 Stmt. ¶ 8; Def. Rule 56.1 Stmt. ¶ 9.) To oversee the administration and investigate Local 32E's operations, International appointed John Ronches to be Trustee and Kevin Doyle and Vincent Pesha to be Deputy Trustees. (Def. Rule 56.1 Stmt. ¶ 10.) Paul Fortier, a Caucasian male, and Kyle Bragg, an African–American male, were selected by Ronches and Doyle to assist the Trustees with Local 32E's operations. (*Id.* ¶¶ 16, 20.) One day after the trusteeship was implemented, Ronches distributed a letter to all Local 32E staff members explaining the trusteeship and informing them that they would be evaluated for "permanent reappointment." (Doyle Aff. ¶ 21.) International directed the Trustees to investigate and report on thirteen matters involving Local 32E's operations, including:

> The identity and status of all outstanding collective bargaining relationships at Local 32E, including the identity of every bargaining unit, location, and employer where Local 32E is a collective bargaining representative.

> A copy of the current contract applicable at each site and the name, address and phone number of the employer bargaining representative for each contract.

> The identity of any location where there currently is no contract in effect, the status of negotiations for a successor contract, and the name, address, and phone number of the employer bargaining representative for each such unit.

(Doyle Aff. ¶ 14, Ex. B at 1–3.)

During the period between December 5, 2000 and February 21, 2001, Local 32E's supervisors and Trustees identified six deficiencies in Taylor's job performance: 1) failure to report commercial contract information to his supervisor; 2) failure to attend a February 8, 2001 negotiation meeting; 3) misuse of Local 32E's gasoline and car allowance; 4) complaints from union members about Taylor's non-responsiveness to his job duties; 5) absences from the office; and 6) flawed negotiations of the Dynaserv contract. (Fortier Aff. ¶¶ 22, 33, 34, 45, 51, 56–57, 64, 68; Pesha Aff. ¶ 25; Doyle Aff. ¶¶ 42–46; Bragg Aff. ¶¶ 27–30.)

In December 2000, Fortier requested that Taylor provide him with the following commercial contract information: 1) which buildings were "under contract;" 2) which buildings Local 32E was in the process of negotiating a contract with; 3) which buildings were without a contract; 4) which buildings Local 32E had "lost;" and 5) which buildings had been closed. (Fortier Dep. at 30.) Taylor states that he complied with Fortier's request to the best of his ability. (Taylor Aff. ¶ 8.) Local 32E claims that Taylor did not provide the information when requested orally, nor did he provide the information after a written request from Fortier in a memo dated January 19, 2001. (Fortier Dep. at 35–36.)[2] Taylor points out that the memo

---

**2.** Fortier stated that the information Taylor did give him concerned about twenty commercial buildings out of approximately 150 to 170. (Fortier Dep. at 32–34.)

does not mention any failure on his part to provide the requested information promptly. (Pl. Rule 56.1 Stmt. ¶ 11.) On January 30, 2001, Fortier met with Taylor to discuss what Fortier referred to as Taylor's failure to provide the requested data, and what Taylor referred to as a status check on the request. (Pl. Rule 56.1 Stmt. ¶ 12; Def. Rule 56.1 Stmt. ¶ 27.) At this meeting, both parties agree that Fortier requested Taylor's presence at a negotiations meeting scheduled for February 8, 2001. (Pl. Rule 56.1 Stmt. ¶ 12; Def. Rule 56.1 Stmt. ¶ 28.) Taylor did not attend the February 8 negotiations, but contends that he informed Fortier at the January 30 meeting that he would be unable to attend the negotiations because he had to attend a funeral on that date. (Pl. Rule 56.1 Stmt. ¶ 12.) Fortier claims that Taylor never informed him that he would be unable to attend and was only informed of the funeral the day after the meeting. (Def. Rule 56.1 Stmt. ¶ 31.)

Local 32E claims that Taylor negotiated a commercial contract with Dynaserv Industries ("Dynaserv"), which Bragg found to be delinquent in two ways: 1) it covered job sites in Manhattan outside Local 32E's jurisdiction; and 2) it contained wage and benefit rates below the Manhattan area and commercial industry standards. (Def. Rule 56.1 Stmt. ¶ 36; Bragg Aff. ¶¶ 26–29.) Bragg informed Taylor that Local 32E would not sign the Dynaserv contract and that a new contract would have to be negotiated. (Bragg Aff. ¶ 30.) Dynaserv then filed an unfair practice charge with the National Labor Relations Board against Local 32E for refusing to execute the contract. (Doyle Aff. ¶ 49, Ex. I.)

Taylor argues that prior to the trusteeship it was standard practice for Local 32E to negotiate the best contractual terms possible, obtain the written authorization of the employer, and then present the contract to Local 32E for approval, it being always understood among the parties that the contract was not binding until approved by Local 32E. (Pl. Rule 56.1 Stmt. ¶ 15; Taylor Aff. ¶ 11.) Further, Taylor contends that the contract was not signed by Local 32E because, as a matter of strategy, it wanted to exert leverage on Dynaserv relative to other job sites and obtain the most favorable terms possible. (Pl. Rule 56.1 Stmt. ¶ 16; Taylor Aff. ¶ 11.)

Local 32E also claims that Taylor sought reimbursement for excessive amounts of gasoline purchases for the car that Local 32E provided him to conduct union business. (Def. Rule 56.1 Stmt. ¶ 39; Pesha Aff. ¶¶ 24–25.) Pesha's affidavit provides an example of the abuse during the week of June 26, 2000, when Taylor requested $100.00 reimbursement for gasoline purchases. (Pesha Aff. ¶¶ 26–27.) According to Pesha, this amount far exceeded what would have been necessary for Taylor's business travel and he claims that Taylor admitted he was submitting gasoline expense requests for his travel to and from his home. (*Id.* ¶¶ 30–31.)

Local 32E also provided written complaints from union members regarding Taylor's nonresponsiveness and unsatisfactory job performance. (Fortier Aff. ¶¶ 24, 57–63; DeGroat Aff., Exs. B, C.) Specifically, members complained that Taylor did not return phone calls, that they were working without contracts and had not seen a business representative for a long time, and when Fortier requested Taylor to follow up on complaints that another business representative was performing unsatisfactorily, Taylor failed to do so. (Fortier Aff. ¶¶ 61–62; DeGroat Aff., Exs. B, C.)

Taylor was terminated on February 21, 2001. (Pl. Rule 56.1 Stmt. ¶ 17; Def. Rule 56.1 Stmt. ¶ 42.) Taylor claims he was never given any reason for his termination

and was merely told that he "did not fit in." Taylor further contends that Fortier took over Taylor's job functions in the commercial area and, after Fortier retired, a white female, Autumn Weintraub, was assigned to handle the commercial area in the New Rochelle office. (Pl. Rule 56.1 Stmt. ¶ 18.) Additionally, two white males who worked directly with Taylor as business agents prior to the trusteeship were not terminated. (*Id.* ¶ 19.)

Local 32E claims that no one replaced Taylor, including Fortier, a supervisor who oversaw the commercial contract department in New Rochelle. Local 32E points out that Brutus Gorhum and John Scott, both African–American males, were employed by Local 32E as business representatives during Taylor's tenure, while Kyle Bragg, also an African–American male, became the Administrator and Supervisor of Local 32E's entire former New Rochelle operations, and Louis Lero, an African–American male, was Local 32E Vice President from October 1985 until his death in December 1988. (Def. Rule 56.1 Stmt. ¶¶ 46–49.)

## DISCUSSION

### I. *Summary Judgment Standard*

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994).

### II. *Racial Discrimination Under Title VII*

Title VII prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). A claim for employment discrimination is governed by the three-step burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Dean v. Westchester County Dist. Attorney's Office,* 119 F.Supp.2d 424, 430 (S.D.N.Y.2000) (Conner, J.). Under this analysis, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, a presumption that the employer unlawfully discriminated against the plaintiff is raised and the burden of production then shifts to the employer to "articulate a legitimate, clear, specific and non-discriminatory reason" for its actions. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). If the employer does so, the presumption of discrimination drops out and the plaintiff has

the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff must submit evidence that would permit a rational factfinder to infer that the discharge was actually motivated, in whole or in part, by discrimination. *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir.1997). In other words, defendant's proffered reason "cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (emphasis in original) *St. Mary's Honor Ctr.*, 509 U.S. at 515, 113 S.Ct. 2742.

■■■ To establish a prima facie case of discrimination, a plaintiff must establish that: (1) he is a member of a protected class; (2) he was performing his duties satisfactorily;[3] (3) he was discharged; and (4) the discharge took place under circumstances that give rise to an inference of unlawful discrimination. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000). The burden to establish a prima facie case is *de minimis*. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203–04 (2d Cir.1995). Nonetheless, "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive." *See Bennett v. Watson Wyatt & Co.*, 136 F.Supp.2d 236, 246 (S.D.N.Y.2001).

■■ Local 32E does not dispute that Taylor is in a protected class or that he was discharged. It argues that Taylor has not established a prima facie case because Taylor was not performing his duties satisfactorily and the discharge did not take place under circumstances that gave rise to an interference of unlawful discrimination. Local 32E contends that Taylor failed to provide commercial contract information, poorly negotiated the Dynaserv contract which led to an unfair labor practice charge filed against Local 32E, failed to attend the February 8, 2001 meeting and abused his gas and car allowance. Further, Local 32E contends that it received numerous complaints from union members regarding Taylor's work performance.

Based on *Slattery*, Taylor need only show that he "possesses the basic skills necessary" to perform the job. 248 F.3d at 92. Taylor was an employee Local 32E for six years and in that time was nominated to complete the unexpired term of Vice President Scott Trivella. Local 32E has proffered no evidence that Taylor was not qualified for the job other than the above arguments, which, based on *Slattery*, are utilized more appropriately as legitimate business reasons for discharge. *Id.* ("The qualification prong must not, however, be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his *prima facie* case, the em-

---

**3.** A variation of "performing his duties satisfactorily" is "qualified for the job," which has led to much confusion. *Darboe v. Staples, Inc.*, 243 F.Supp.2d 5, 11–12 (S.D.N.Y.2003); *Choate v. Trans. Logistics Corp.*, 234 F.Supp.2d 125, 129 n. 3 (D.Conn.2002). In 1997, the Second Circuit interpreted this element subjectively, requiring that the plaintiff "demonstrate satisfactory job performance, in accordance with the particular employer's criteria for satisfactory performance." *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26,

30 (2d Cir.1997). However in 2001, the Second Circuit held that the language "performing satisfactorily" does not raise the standard for what suffices to show qualification. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir.2001). The Second Circuit went on to state that the two phrases may be used interchangeably "so long as, in substance, all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." *Id.*

ployer's proffer of a legitimate, non-discriminatory basis for its decision."); *see also Darboe*, 243 F.Supp.2d at 11–12; *Girma v. Skidmore Coll.*, 180 F.Supp.2d 326, 338 (N.D.N.Y.2001). Therefore, Taylor has satisfied the second prong of his prima facie case.

Plaintiff must next establish that the discharge took place under circumstances that give rise to an inference of unlawful discrimination. On a motion for summary judgment, the court must determine whether the "proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Kearney v. Pyramid Mgmt. Group, Inc.*, No. 98 Civ. 0531, 2000 WL 744000, at *10 (W.D.N.Y. June 5, 2000). In doing so, the court may look to factors such as the employer's continued solicitation of applications from people with qualifications similar to those of plaintiff after the plaintiff's discharge, racially offensive language used to criticize the plaintiff, disparaging comments about people in the plaintiff's protected class, more favorable treatment to others not in the protected group, the circumstances leading to the plaintiff's discharge and the timing of the discharge. *Id.*

Here, Taylor argues that after he was discharged, Fortier, a white male, assumed Taylor's responsibilities and that a white female, Autumn Weintraub, took over after Fortier retired. Further, Taylor contends that two white males, both of whom worked directly with him as business agents prior to the trusteeship, were not terminated and that Kyle Bragg, who Local 32E points out to be an African–American male supervisor, never actually supervised, monitored or participated in the daily operations of Local 32E.

Being replaced by someone not in the protected class is sufficient evidence to make an inference of discrimination required for plaintiff's prima facie case. *Zimmermann v. Assoc. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir.2001). However, "a person is replaced only when another employee is hired or assigned to perform the plaintiff's duties," not "when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Coleman v. Prudential Relocation*, 975 F.Supp. 234, 243 (W.D.N.Y.1997) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990)). Here, Taylor admits that his supervisor Fortier assumed Taylor's responsibilities and that a white female, Autumn Weintraub, took over only after Fortier retired. While this undermines Taylor's showing of an inference of discrimination, there are still questions surrounding his discharge. *Watt v. New York Botanical Garden*, 2000 WL 193626, at *8 (S.D.N.Y. Feb.16, 2000). For example, Local 32E claims that Taylor was discharged due to poor work performance. However, Local 32E never issued written warnings, reprimands or criticisms to Taylor and according to Taylor never informed him that he was being discharged due to poor performance. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 39 (2d Cir.1994) (questioning why the company never mentioned any problems with the plaintiff's work performance in his personnel file and never informed him that the discharge was due to poor work performance). In addition, Taylor alleges that two white males, both of whom worked directly with him as business agents prior to the trusteeship, were not terminated. Moreover, Taylor received a salary raise on December 1, 2000, from $850 per week to $1,200 based on what

Local 32E states on its payroll change notice as a "merit increase."[4] (DeGroat Aff., Ex. A.) While the above arguments are not sufficient proof of discrimination, the burden on plaintiff is minimal at this stage and are therefore sufficient to raise an inference of discrimination to shift the burden to defendant. *Baptiste v. Laquila–Pinnacle*, 2003 WL 21756094, at *4 (S.D.N.Y. July 30, 2003).

■ The burden of production now shifts to the employer to "articulate a legitimate, clear, specific and non-discriminatory reason" for its actions. *Quaratino*, 71 F.3d at 64. Local 32E submits, as its legitimate non-discriminatory reasons for discharging Taylor, six deficiencies in plaintiff's job performance: 1) failure to report commercial contract information to his supervisor; 2) failure to attend a February 8, 2001 negotiation meeting; 3) misuse of Local 32E's gasoline and car allowance; 4) complaints from union members about Taylor's non-responsiveness to his job duties; 5) absences from the office; and 6) flawed negotiations of the Dynaserv contract.

The plaintiff now has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 515, 113 S.Ct. 2742. Taylor may rely on the evidence comprising his prima facie case or present additional evidence showing that defendant's proffered reason is not credible. *Chambers*, 43 F.3d at 38. Taylor disputes four out of the six stated deficiencies. Specifically, Taylor contends that: 1) he did report the contract information; 2) he informed Fortier that he would be unable to attend the February 8, 2001 meeting; 3) he did not have unexcused absences from work; and 4) he was not the sole negotiator for the Dynaserv contract. In neither his memorandum of law, his affidavit, nor his Rule 56.1 Statement, the only documents Taylor submitted to the Court, does Taylor address the two written complaints about him from union members or the misuse of gas expenses, leaving this Court to conclude that he has not proven by a preponderance of the evidence that Local 32E's reasons for discharging him were a pretext.

■ However, even if Taylor did provide sufficient evidence of pretext, that alone is not sufficient. *Grady*, 130 F.3d at 561. "There must also be evidence that would permit a rational factfinder to infer that the discharge was actually motivated, in whole or in part, by discrimination."[5] *Id.* There is no evidence that anyone at Local 32E made any racially offensive remarks and while the absence of such behavior does not preclude the possibility that discrimination occurred, Taylor presents no statistical evidence to show that Local 32E discriminated in its employment decisions. Taylor makes conclusory statements supported by nothing other than his own affidavit. For instance, Taylor states

---

**4.** The merit increase came after Local 32E received two letters of complaint from union members, but before the other deficiencies noted by Local 32E, specifically failure to report contract status, failure to attend the February 8 meeting, misuse of gasoline allowance, absences from the office and flawed negotiating of the Dynaserv contract.

**5.** This standard differs from the fourth prong of the plaintiff's prima facie case in that during the final stage of the *McDonnell Douglas* analysis, the plaintiff must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reason proffered by the defendant was false and that more likely than not the employee's race was the real reason for discharge rather than just some evidence to satisfy his *de minimis* burden at the prima facie stage. *Bernard v. New York City Health & Hosp. Corp.*, 1996 WL 457284, at *12 n. 10 (S.D.N.Y. Aug.14, 1996).

in his Rule 56.1 Statement that two white males "worked directly with the Plaintiff as business agents prior to the trusteeship, and neither of them were terminated as was the Plaintiff." (Pl. Rule 56.1 Stmt. ¶ 19.) Taylor presents no evidence that these two men performed the same job, had the same job experience or were in any way similarly situated.[6] Further, Taylor states that he was the only African–American male employed in a supervisory capacity. (*Id.* ¶ 6.) Taylor points out that Kyle Bragg, an African–American male, did not supervise him, but fails to note that Bragg is in fact a supervisor for Local 32E's Bronx division.[7] (Bragg Aff. ¶ 13.) Additionally, as discussed above, Taylor's job duties were taken over by his supervisor, Fortier, and when he retired, a white female took over, neither of which "replaced" Taylor. *Coleman,* 975 F.Supp. at 243. In sum, Taylor has presented no evidence and this Court has found no evidence from which any rational factfinder could infer that Taylor was treated differently or was fired because of his race.

## CONCLUSION

For the above stated reasons, defendant Service Employees International Union Local 32E's motion for summary judgment is granted in its entirety. The Complaint is dismissed with prejudice but without costs.

SO ORDERED.

---

**6.** "In order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." *Visco v. Cmty. Health Plan,* 957 F.Supp. 381, 389 (N.D.N.Y.1997). Taylor has presented no such evidence.

**7.** Even if plaintiff could prove that Bragg was not a supervisor, he has presented no statistical evidence to indicate that African Americans are routinely precluded from becoming supervisors.