Ebrima DARBOE, Plaintiff,

v.

STAPLES, INC., John Doe 1–10, and XYZ, Inc. 1–10 Defendants.

No. 01 CIV. 7006(CM).

United States District Court, S.D. New York.

Feb. 7, 2003.

Shmuel Berel Klein, Law Offices of Shmuel Klein, P.C., Spring Valley, for Ebrima Darboe, plaintiff.

Peter A. Walker, Seyfarth, Shaw, John A. Colonna, Seyfarth Shaw, New York, for Staples, Inc., John 1–10 Doe, XYZ, Inc. 1—10, defendants.

MEMORANDUM DECISION AND OR-DER DENYING IN PART AND GRANTING IN PART DEFEN-DANT'S MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Ebrima Darboe sued defendant Staples, Inc. ("Staples") after he quit his job at Staples' Ramsey, New Jersey store subsequent to his demotion from the position of lead salesman. Darboe claims in his complaint that Staples' acts toward him violated Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 1983 ("Section 1983");

42 U.S.C. § 1981 ("Section 1981"); the Family Medical Leave Act ("FMLA"); and the New York State Civil Rights Law § 40. The complaint also sets forth the common law state claims of defamation and intentional infliction of emotional distress. Staples moves for summary judgment on all claims.

For the following reasons, Staples' motion is denied in part and granted in part.

## I. Facts

The following facts are undisputed unless otherwise noted.

Plaintiff Ebrima Darboe is African American. [Staples 56.1 Statement ¶ 2]. Although Staples does not address the details of Darboe's ethnicity, Darboe explains that he immigrated to the United States approximately twenty years ago from Banjul, an island off the coast of West Africa, and became a permanent resident sixteen years ago. [Darboe 56.1 Statement ¶ 3]. He further alleges that he continues to speak with a noticeable West African accent. [Darboe Opposition 1].

On or about June 21, 1999, Staples hired Darboe to work as lead of the store's electronics department.[1] His formal title was "Lead Capital Goods (Electronics)." [Staples 56.1 Statement ¶ 6]. Darboe's responsibilities included selling "extended protection plans" ("EPPs"); ensuring timely and accurate price changes; and maintaining presentation standards, in-stock inventory levels, and "plan-o-gram integrity." [Staples 56.1 Statement ¶ 6]. Darboe alleges that while his responsibilities as lead included duties other than selling, the sale of EPPs was of primary importance.

---

1. Darboe alleges that Staples hired him for a full-time position on that date, while Staples alleges that it hired Darboe for a part-time position on June 21 and made him a full-time employee on October 17, 1999.

Stan Mullins, who is also African American, was the manager of Staples' Ramsey, New Jersey store since January 1, 2000. [Staples 56.1 Statement ¶¶ 4–5; Mullins Aff. ¶ 2]. On May 26, 2000, Mullins presented Darboe with a written performance review. The review listed performance deficiencies, set forth performance goals, and stated that "[f]ailure to meet above requirements will result in disciplinary action up to and including demotion." [Staples 56.1 Statement ¶ 9; Darboe 56.1 Statement ¶ 12]. Darboe signed this document, but he alleges that he did so only because Mullins threatened to fire him if he did not. [Darboe 56.1 Statement ¶ 13]. He also claims that he did not take "the criticisms seriously because [he] knew that they were contradicted by the true evidence of his performance." *Id.*

At some point over the next couple of months, Mullins presented Darboe with another written performance review that stated: "Since there has been no improvement in your performance as the business machine lead, you are being demoted from your position, effective beginning the new quarter." [Staples 56.1 Statement ¶ 14].[2] Exactly when Mullins presented Darboe with this document is in dispute. Darboe alleges that Mullins first showed him the review in early August 2000. [Darboe 56.1 Statement ¶ 14]. Staples claims that Mullins gave Darboe the review on July 21, 2000. The performance review is signed by Darboe and dated July 21, 2000 [Mullins Aff., Ex. 3], but Darboe claims that the date on the document is not in his handwriting. [Darboe 56.1 Statement ¶ 12]. He admits that he did sign the document

in early August, but only because he feared losing his job if he did not do so.

The precise date that Mullins first told Darboe of his demotion is relevant because sometime in late June Darboe asked sales manager Gene Parziale whether he could take time off so that he could have surgery. [Staples 56.1 Statement ¶ 23].[3] Darboe knew that Mullins had to approve any such request, so Darboe asked him for the time off to have his medical treatment and Mullins gave his approval. *Id.* at ¶ 26–27. Darboe remained out of work for six days from July 26 to July 31.[4] *Id.* at ¶ 31.

Upon Darboe's return from sick leave on August 1, Mullins invited Darboe into his office and closed the door. [Staples 56.1 Statement ¶ 33]. Mullins told Darboe of his demotion to Sales Associate, which became effective that day. *Id.* at ¶ 35. Staples alleges that Mullins called Darboe into his office to remind him of the demotion, which he had already informed Darboe of on July 21. *Id.* In contrast, Darboe claims that this was the first time that he learned of his demotion. [Darboe 56.1 Statement ¶ 14]. Darboe further alleges that he told Mullins that he was the top selling salesman, to which Mullins responded: "Now you're nothing," or "Now you're nobody." *Id.* at ¶ 30.

After his demotion, Darboe continued to work at the store as a Sales Associate for several months. [Staples 56.1 Statement ¶ 37]. On January 8, 2001, Darboe received and signed a Staples Performance Counseling Record that stated: "Is not an active participant in the Staples selling programs. Does not sell EPPs, CPP

---

2. The new quarter began on August 1. [Staples 56.1 Statement ¶ 19].

3. Darboe alleges that he was scheduled to have polyps removed from his sinus cavity at the end of July 2000. [Staples 56.1 Statement ¶ 22].

4. Four of these days were sick days, one was Darboe's regular day off, and one was a Sunday (when the store was regularly closed).

[computer protection plans], or PRPs [product replacement plans] to help store reach its goals." [Staples 56.1 Statement ¶ 38; Mullins Aff. Ex. 6]. The review also stated that "further performance will lead to more counseling [with] the final result being removal from dept. or overall termination." *Id.* Darboe alleges that this review constituted a continuation of Mullins "efforts to target and abuse Plaintiff, and to criticize his performance unjustly." [Darboe 56.1 Statement ¶ 18].

On or about February 3, 2001, Darboe entered the store and presented Mullins with a piece of paper that stated: "Because Staples violated the Family Medical Leave Act and failed to restore me to my position and salary rate I am forced to resign my position. All rights are reserved." [Staples 56.1 Statement ¶ 39; Colonna Decl., Ex. E]. Darboe demanded that Mullins sign the document. When Mullins refused to do so, Darboe resigned his employment. [Staples 56.1 Statement ¶¶ 39, 41, 42].

Darboe claims that, as a result of Staples' actions towards him, he has suffered physical and psychological damage, his marriage fell apart, he developed asthma, and he was depressed and humiliated. *Id.* at ¶ 20.

## II. Discussion

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec.*

*Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has made such a showing, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Summary judgment is "ordinarily inappropriate" in the context of a workplace discrimination case because the allegations usually require an exploration into an employer's true motivation and intent for making a particular employment decision. *Patrick v. LeFevre,* 745 F.2d 153, 159 (2d Cir.1984). And "[e]mployers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law." *Bickerstaff,* 196 F.3d at 448 (citation omitted).

Yet the "impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." *McLee v. Chrysler Corp.,* 38 F.3d 67, 68 (2d Cir.1994). Plaintiff is not absolved of the responsibility of producing sufficient evidence from which a reasonable juror could return a verdict in his favor. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Lipton v. Nature*

*Co.*, 71 F.3d 464, 469 (2d Cir.1995) (finding that mere speculation or conjecture as to the true nature of the facts cannot overcome a motion for summary judgment); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all [discrimination] cases."); *Ricks v. Conde Nast Publications, Inc.,* 92 F.Supp.2d 338, 343–44 (S.D.N.Y.2000) (same).

### A. Unopposed Aspects of the Motion

Staples argues that (1) Darboe failed to obtain a right to sue letter from the Equal Employment Opportunity Commission and this Court therefore lacks jurisdiction over his Title VII claim; (2) Staples does not operate under color of local, state, or federal law, as Section 1983 requires; (3) Darboe failed to notify the New York Attorney General before commencing this action, as New York Civil Rights Law § 40 requires; and (4) Darboe cannot present a *prima facie* case of defamation because the allegedly defamatory comment was not published to any third party.

With regard to the first three of these arguments, Darboe concedes that he has "no good faith opposition to summary judgment." [Darboe Opposition to Motion for Summary Judgment 7, 8, 16]. As for Staples' argument with regard to defamation, Darboe admits that he "is not aware that [the alleged] defamatory remarks were published or caused to be published to any third party." *Id.* at 16. I therefore grant Staples' motion for summary judgment on plaintiff's third and sixth causes of action.[5]

Darboe's Section 1981, FMLA, and intentional infliction of emotional distress claims remain for consideration.

### B. Section 1981

Section 1981 provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. The right to make and enforce contracts encompasses employment discrimination. *See Johnson v. Railway Express Agency,* 421 U.S. 454, 459, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). And as in the context of other employment discrimination statutes, the three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

The first step of the *McDonnell Douglas* analysis requires plaintiff to establish a *prima facie* case by showing that (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) the circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See, e.g., Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 567 (2d Cir.2000); *Cruse v. G & J USA Pub.,* 96 F.Supp.2d 320, 327–28 (S.D.N.Y.2000). A presumption that the employer unlawfully discriminated against plaintiff arises if he makes out his *prima facie* case—a *de minimis* burden—and the burden of proof then shifts to the employer to produce evidence that the adverse employment action occurred for some legitimate, nondiscriminatory reason. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105

---

**5.** Plaintiff brings his Title VII, Section 1983, and New York Civil Rights Law § 40 claims all under the third cause of action in his complaint.

(2000); *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir.2001). If the employer can do that, the presumption of discrimination drops out and the plaintiff bears the burden of showing that the proffered reason is false and that discrimination is the real motive behind the employment action. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir.2000).

### 1. *Prima Facie* Case

▮ Here, Darboe clearly establishes three of the four prongs of a *prima facie* case: as an African American man he is a member of a "protected class"; his demotion from the position of lead salesman constitutes an "adverse employment action," *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999); and the fact that he "was replaced by someone outside his protected class" (a white man) gives rise to an inference of discrimination. *Tarshis v. Riese Org.*, 211 F.3d 30, 36 (2d Cir.2000). A harder question, however, is whether Darboe was "qualified" for the position of lead salesman—an issue complicated by inconsistent Second Circuit precedent.

The Second Circuit has at times formulated the "qualification" prong as requiring that a plaintiff show that he "was performing his duties satisfactorily." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994); *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.1985). In *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26 (2d Cir.1997), Judge Leval ruled that "a plaintiff complaining of discriminatory discharge shows 'qualification' by demonstrating satisfactory job performance in accordance with the particular employer's criteria for satisfactory performance." *Id.* at 30. Under the

*Thornley* standard, "whether job performance was satisfactory depends on the employer's criteria for the performance of the job—not the standards that may seem reasonable to the jury or judge." *Id.* at 29.

A different panel of the Court of Appeals reached a different conclusion, however, in *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87 (2d Cir.2001). In that case, plaintiff sued his former employer after it demoted and later terminated him. The district court granted defendant's motion for summary judgment in part on the ground that plaintiff had not demonstrated that he was " 'satisfactorily' performing his duties." *Id.* at 90. Judge Calabresi's decision is worth quoting at length:

> [T]he district court overstated the requirements for a *prima facie* case. Instead of requiring [plaintiff] to demonstrate that he was "qualified for the position," it demanded a showing that "he was performing his duties satisfactorily." We have ourselves used similar language. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997). But in doing so we have not, of course, raised the standard set by the Supreme Court for what suffices to show qualification. Thus a mere variation in terminology between "qualified for the position" and "performing ... satisfactorily" would not be significant so long as, in substance, all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer. The qualification prong must not, however, be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his *prima facie* case, the employer's proffer of a legitimate, non-discriminatory basis for its decision. As we have repeatedly held, the qualification necessary to shift

the burden to defendant for an explanation of the adverse action is minimal; plaintiff must show only that he "possesses the basic skills necessary for performance of [the] job." As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw.

*Id.* at 91–92 (internal citations omitted); *see also Gregory v. Daly,* 243 F.3d 687, 696–97 (2d Cir.2001).

Courts have followed both cases, creating disparate lines of authority. *See, e.g., Windsor v. Rockefeller Ctr./Tishman Speyer,* 2002 WL 1467834, at *3 (S.D.N.Y. July 8, 2002) (following *Slattery* ); *Georgy v. O'Neill,* 2002 WL 449723, at *6 (E.D.N.Y. Mar.25, 2002) (same); *Girma v. Skidmore College,* 180 F.Supp.2d 326, 338 (N.D.N.Y.2001) (same); *People v. Pimentel,* 282 A.D.2d 280, 725 N.Y.S.2d 1 (S.D.N.Y. 2001) (following *Thornley* ); *Khan v. Universal Imaging Solutions, Inc.,* 2001 WL 1029408, at *5 (S.D.N.Y. Sept.6, 2001) (same). At least one court has commented on the inconsistency. *Choate v. Transp. Logistics Corp.,* 234 F.Supp.2d 125 n. 3 (D.Conn. Dec.30, 2002).

Under the facts as interpreted most favorably to plaintiff, Staples gave Darboe a raise several months after it hired him. [Darboe Opposition 1].[6] And there is also ample evidence to support Darboe's ability as a salesman. [Hershkowitz Affirmation, Ex. B; Parziale Aff. ¶¶ 8–11, 15; Darboe Aff., Exs. A–C]. Thus, Darboe easily satisfies the *Slattery* standard, especially since where demotion is at issue "and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." 248 F.3d 87.

I also find that a genuine issue of material fact exists as to whether plaintiff satisfies the *Thornley* standard. In *Meiri v. Dacon (Thornley*'s predecessor case), the Second Circuit held that in determining whether an employee's job performance is satisfactory, "the ultimate inquiry is whether an employee's performance 'meets his employer's legitimate expectations.' " 759 F.2d 989, 995 (2d Cir.1985) (quoting *Huhn v. Koehring Co.,* 718 F.2d 239, 244 (7th Cir.1983)). In making this determination, "courts may—as they often must—rely on the evaluations rendered by supervisors." *Id.* But "[a]lthough courts must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision making process, they must also allow employees 'to show that the employer's demands were illegitimate or arbitrary.' " *Id.* (quoting *Kephart v. Inst. of Gas Tech.,* 630 F.2d 1217, 1223 (7th Cir.1980)) (internal citations omitted). In other words, a plaintiff must show that he satisfied the employer's "honestly-held expectations," and "[a]bsent a showing by the plaintiff that the employer's demands were made in bad faith, an employer who is sued on allegations of age discrimination is not compelled to submit the reasonableness of its employment criteria to the assessment of either judge or jury." *Thornley,* 104 F.3d at 29.

Staples' May 26 evaluation faulted Darboe's performance in four respects: (1) he did not use the radio frequency guns, which is important in maintaining the department's inventory levels; (2) he did not accurately or consistently mark price changes (some products had shelf tags that were almost a year old); (3) he did not keep up-to-date or properly maintain displays (old items the store no longer carried

---

6. Staples assertion, which Darboe contests, that it hired Darboe for a part-time position in June 1999 and that his status changed to full-time in October 1999 also supports an inference that plaintiff was qualified. [Staples 56.1 Statement ¶¶ 2–3].

were still on display, and new items were not displayed); and (4) he did not adequately help drive the store's EPP goal. The second performance review reiterated these criticisms. [Mullins Aff., Ex. 2].

With respect to Staples' first criticism, Darboe alleges—contrary to Staples' assertions—that he performed "zero balance analyses" on a daily basis. [Colonna Decl., Darboe Deposition 64–65]. A trier of fact must decide whom to believe. As to the rest of Staples' criticisms, Darboe argues—though he does not put it in these terms—that Staples' expectations were illegitimate because they set unrealistic standards. *See Dale v. Chicago Tribune Co.,* 797 F.2d 458, 463 (7th Cir.1986), *cited in Stein v. McGraw–Hill, Inc.,* 782 F.Supp. 207, 212 (S.D.N.Y.1992).

First, Darboe alleges that the store's management was never organized or timely about getting the pricing information out so that they could be changed on the shelves. [Darboe 56.1 Statement ¶ 6]. To support this allegation, Darboe offers the affidavit of a former Staples employee. The affiant states that "[t]he store's higher management, including Mr. Mullins, the general manager, was never organized in getting that information out to the staff," and "[t]he staff, including Mr. Darboe, would usually have to catch up with [marking price changes] during breaks or when business was slow." [Lagnoni Aff. ¶¶ 10–12].

Second, Darboe alleges that he could not update product displays because the store was understaffed. [Darboe 56.1 Statement ¶ 5]. To substantiate this claim, plaintiff offers a note allegedly written by Alan Labeur, the Sales Manager when Darboe began to work at Staples. The note is dated December 14, 1999 and states: "Conversation w/ Ebrima on EPP/CPP. Being our 'Reggie Jackson' ... Also w/ complaining about not enough hel[p], lets do what we can w/ what we have. Price Change, EPP/CPP and emerging stock. Plus, keep an eye on other people working in Dept. to help keep area clean." [Hershkowitz Affirmation, Ex. B].[7]

Finally, with respect to Staples' criticism that Darboe did not sufficiently work toward meeting the department's EPP goal, Darboe alleges (a) he was one of the most successful salesmen in the store, and (b) the individual and department EPP quotas were rarely, if ever, met [Parziale Aff. ¶ 14; Colonna Decl., Darbeo Deposition 75]. There is ample evidence to support Darboe's ability as a salesman. [Hershkowitz Affirmation, Ex. B; Parziale Aff. ¶¶ 8–11, 15; Darboe Aff., Exs. A–C]. And Parziale deposes that "[t]he quotas which were set for salesmen were never met by anyone. I believe the numbers were set only as unattainable goals ...." [Parziale Aff. ¶ 14]. *See Shearin v. Int'l Bus. Machs. Corp.,* 1995 WL 133761, at *2 (S.D.N.Y. Mar.28, 1995) (finding that genuine issue of material fact existed as to defendant's good faith in establishing plaintiff's quota). Staples argues, however, that this evidence is irrelevant because Mullins criticized Darboe not for his individual EPP sales performance, but for the department's EPP sales figures. But evidence concerning whether Darboe performed well individually and that the quotas set for individual salesmen were unrealistic, though not directly related, is certainly relevant to whether the department sales goals were realistic. A reasonable jury could con-

7. Darboe claims that Labeur referred to him as the store's "Reggie Jackson" because of his considerable sales talent. [Darboe 56.1 Statement ¶ 7]. In other words, he contends that much like Jackson's ability to hit home runs in the postseason earned him the title "Mr. October," Darboe's sales prowess earned him the moniker "Reggie Jackson."

clude that unrealistic individual sales quotas, aggregated together, led to unrealistic department goals.

In sum, "[t]he burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion 'at the prima facie stage is de minim[i]s.'" *Chambers*, 43 F.3d at 37 (quoting *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1115 (2d Cir.1988)). Plaintiff satisfies the qualification prong under the *Slattery* standard. And a genuine issue of material fact exists as to whether plaintiff satisfies the heightened *Thornley* standard.

## 2. Pretext

■ Because a genuine issue of fact exists as to whether Darboe can establish a *prima facie* case, the burden shifts (in the context of this motion for summary judgment) to Staples to articulate a non-discriminatory reason for Darboe's demotion. Staples' burden is a light one. "The employer need not persuade the court that it was motivated by the reason that it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir.1998). In other words, it is a burden "of production, not persuasion." *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097.

As noted more fully above, the May 26 performance evaluation faults Darboe's performance in several respects. These criticisms more than satisfy Staples' burden, and the presumption of discrimination thus drops out. As a result, Darboe must show that the allegedly legitimate reason (poor performance) was a pretext for discrimination. This requires that plaintiff show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d

407 (1993). In the summary judgment context, *St. Mary's* requires a plaintiff to "establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false *and* as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential Servs. Ltd., P'ship*, 22 F.3d 1219, 1225 (2d Cir.1994). Genuine issues of material fact exist with respect to both considerations.

First, the same evidence that precluded summary judgment at the *prima facie* stage of the *McDonnell Douglas* analysis—that he performed the zero-balance analysis, the management did not timely disburse pricing information, the store was understaffed, and quotas were unrealistic—also establishes a genuine issue of material fact as to whether Staples' reasons for demoting were false.

Second, plaintiff offers evidence upon which a reasonable jury could conclude that Staples' real reasons for demoting Darboe were discriminatory. The primary evidence that Darboe offers in this regard is the affidavit of Gene Parziale. Parziale deposes that he can recall only one lead salesman who was demoted during his tenure at Staples; the demotion was warranted because his "performance numbers truly were disappointing"; he believes the salesman's name was "James"; "James" was white; and "James" did not receive a pay cut upon his demotion. [Parziale Aff. ¶¶ 18–19].

In response to plaintiff's claims regarding "James," Staples produces records that reveal that only two employees named "James" worked at the store during either Darboe's or Parziale's tenure their—James Keller and James Martine. [Mullins Decl. ¶ 2]. Keller worked as a cashier during his entire time of employment at the store.

And Martine started at the store as an associate in the furniture department (not lead salesman) and was demoted to a cashier position. *Id.* This document fails, however, to rebut Darboe's claims completely. It does not establish that Martine received a cut in pay upon his demotion, nor that he was not white. The fact that Martine was not a lead salesman, but rather a sales associate, is irrelevant—Staples offers no evidence that the salaries of a sales associate and cashier are commensurate. A reasonable jury could conclude—at least under the record now before me, which I necessarily interpret in the light most favorable to plaintiff—that Staples discriminated against Darboe from the fact that Mullins did not cut a white member of the sales staff's pay when he demoted him, but did cut Darboe's pay upon his demotion.

Overall, plaintiff's evidence for his Section 1981 claim—particularly with regard to discriminatory intent—is very thin. And it is made thinner by the fact that Mullins, the General Manager who demoted Darboe, is also African American. It is, of course, entirely possible that "human beings of one definable group will discriminate against other members of that group." *Castaneda v. Partida,* 430 U.S. 482, 499, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *see also Curley v. St. John's Univ.,* 19 F.Supp.2d 181, 192 (S.D.N.Y.1998). But if the decision-maker is in the same protected class as plaintiff, claims of discrimination become less plausible. *See, e.g., Anderson v. Anheuser–Busch, Inc.,* 65 F.Supp.2d 218, 219 (S.D.N.Y.1999). Plaintiff's burden at the summary judgment stage of the proceedings, however, is not especially onerous—he must simply show that a genuine issue of material fact exists. Despite his less than compelling evidentiary showing, plaintiff carries this burden.

### C. FMLA

Darboe further alleges that Staples demoted him because he took medical leave to have nasal surgery. The FMLA makes it unlawful for employers to: (i) "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA, 29 U.S.C. § 2615(a)(1); (ii) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA, 29 U.S.C. § 2615(a)(2); or (iii) "discharge or in any other manner discriminate against any individual because such individual" is involved in an inquiry or proceeding regarding a right provided under the FMLA, 29 U.S.C. § 2615(b). Courts in this Circuit have allowed suits in which plaintiffs claim they were demoted or terminated for taking FMLA-protected leave to proceed under both Section 2615(a)(1) and Section 2615(a)(2). *See Mann v. Mass. Correa Elec., J.V.,* 2002 WL 88915, at *5 (S.D.N.Y. Jan.3, 2002) (Section 2615(a)(1)); *Merli v. Bill Communications,* 2002 WL 424649, at *5 (S.D.N.Y. Mar.18, 2002) (Section 2615(a)(2)); *Bond v. Sterling,* 77 F.Supp.2d 300, 302–03 (N.D.N.Y.1999) (Section 2615(a)(2)). In his motion papers, plaintiff indicates that he brings his claim under Section 2651(a)(1). [Darboe Opposition to Motion for Summary Judgment 15 n. 1].

Although the Second Circuit has not decided the issue, other courts of appeal and district courts within the Second Circuit have found that the *McDonnell Douglas* analysis applies in FMLA retaliation claims brought under Section 2651(a)(2). *See Chaffin v. John H. Carter Co.,* 179 F.3d 316 (5th Cir.1999); *King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir.1999); *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 160 (1st Cir.1998); *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1325 (10th Cir.); *see also Hale v. Mann,* 219 F.3d 61, 70 (2d Cir.2000) (declining to ad-

dress whether McDonnell Douglas analysis test applies in FMLA retaliation claims). But courts differ as to whether the *McDonnell Douglas* analysis also applies in claims arising under Section 2615(a)(1). *Compare Chaffin,* 179 F.3d at 319 (*McDonnell Douglas* analysis applies in claims brought under Section 2615(a)(1)); *King,* 166 F.3d at 892 (same); *Hodgens,* 144 F.3d at 160 (same); *and Morgan,* 108 F.3d at 1323 (same); *with Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1124 (9th Cir.2001) (*McDonnell Douglas* analysis does not apply to claims brought under Section 2615(a)(1)); *and Mann v. Mass. Correa Elec., J.V.,* 2002 WL 88915, at *5 (same).

In order to make out a case under *Bachelder* and *Mann,* a plaintiff must prove "that (1) she participated in FMLA-protected activity and (2) the [adverse employment decision] was motivated by her participation in the protected activity." *Mann v. Mass. Correa Elec., J.V.,* 2002 WL 88915, at *6. When the *McDonnell Douglas* analysis applies, plaintiff must first make out a *prima facie* case by showing that "(1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the Plaintiff's protected activity and the adverse employment action." *LeBoeuf v. New York Univ. Med. Ctr.,* 2000 WL 1863762, at *2 (S.D.N.Y. Dec.20, 2000).

Because plaintiff establishes that a genuine issue of material fact exists under the more rigorous *McDonnell Douglas* analysis, he also has established that a genuine issue of material fact exists under the standard enunciated in *Bachelder* and *Mann. See Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc.,* 2002 WL 1059117, at *7 (S.D.N.Y. May 28, 2002) (denying defendant's motion to set aside jury verdict because plaintiff satisfied more rigorous

*McDonnell Douglas* analysis and therefore declining to decide which standard applies); *Morgan v. FBL Fin. Servs., Inc.,* 178 F.Supp.2d 1022 (S.D.Iowa 2001) (declining to decide which standard applies because genuine issue of fact existed under more onerous *McDonnell Douglas* analysis). Thus, I need not determine whether the *McDonnell Douglas* analysis applies in Section 2651(a)(1) cases.

### 1. *Prima Facie* Case

As in the context of plaintiff's Section 1981 claim, it is clear that Darboe's demotion constitutes an "adverse employment action." The parties dispute, however, whether plaintiff "availed himself of a protected right under the FMLA" and, assuming the answer to that question is in the affirmative, whether there was a "causal connection" between the protected activity and his demotion.

### a. Protected Right Under the FMLA

██ Staples argues (though it does not make this argument in the context of plaintiff's *prima facie* case) that Darboe did not avail himself of a protected right under the FMLA because Darboe asked for four days of sick leave and he got it; he never asked for additional time off; and he therefore did not need FMLA leave and Staples had no reason to believe that the FMLA was implicated under the circumstances of this case. Staples' argument is flawed for two reasons.

First, the fact that an employee takes sick leave does not render the FMLA inapplicable. After carefully analyzing the relevant statutory provisions and administrative regulations, the Eleventh Circuit has explained that they

> make clear that an employer who is subject to the FMLA and also offers a paid sick leave policy has two options when an employee's leave qualifies both

under the FMLA and under the employer's paid leave policy: the employer may either permit the employee to use his FMLA leave and paid sick leave sequentially, or the employer may require that the employee use his FMLA leave entitlement and his paid sick leave concurrently. The [defendant] adopted the latter option. Neither Congress nor the Department of Labor could have intended ... to allow employers to evade the FMLA by providing their employees with paid sick leave benefits. Otherwise, when an employee misses work for an illness that qualifies under both his employer's paid sick leave policy and the FMLA, his employer could elect to have the absence count as paid sick leave rather than FMLA leave and would then be free to discharge him without running afoul of the Act.

*Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1205 (11th Cir.2001). Similarly, in *Price v. City of Fort Wayne*, the Seventh Circuit rejected the defendant's contention that "by asking for paid leave only, and not also for unpaid leave, [plaintiff] foreclosed the inference that she might be interested in FMLA leave." 117 F.3d 1022, 1026 (7th Cir.1997). In other words, plaintiff's use of sick days afforded to him under Staples' employment plan does not automatically preclude application of the FMLA.

■ Second, an employee "need not expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice, though the employee would need to state a qualifying reason for the needed leave." 29 C.F.R. § 825.208(a)(2). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm v. JH Props., Inc.*, 149 F.3d 517,

523 (6th Cir.1998) (citations omitted), *quoted in Mann v. Mass. Correa Elec., J.V.*, 2002 WL 88915, at *7. And "[o]nce an employee provides sufficient notice, the employer is on inquiry notice and bears the burden of ascertaining further details to determine whether the leave qualifies for FMLA protection." *Barr v. New York City Transit Auth.*, 2002 WL 257823, at *7 (E.D.N.Y. Feb.20, 2002).

Here, Darboe alleges that he was scheduled to have polyps removed from his sinus cavity at the end of July 2000. [Staples 56.1 Statement ¶ 22]. It is undisputed that Darboe asked sales manager Gene Parziale whether he could take time off so that he could have the surgery. *Id.* at ¶ 23. Darboe knew that Mullins had to approve any such request, so Darboe asked him for the time off to have his medical treatment and Mullins gave his approval. *Id.* at ¶¶ 26–27. Under these facts, I decline to grant summary judgment on a finding that Darboe's condition did not constitute a "serious health condition" under 29 U.S.C. § 2611(11) or that he failed to give sufficient notice under 29 U.S.C. § 2612(e)(2).

**b. Causal Connection**

■ A plaintiff may demonstrate a "causal connection" by showing that the adverse employment action closely followed in time the protected activity. *See Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988); *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160–61 (1st Cir.1998); *Young v. Rogers & Wells, LLP*, 2002 WL 31496205, at *7 (S.D.N.Y. Nov.6, 2002); *Merli*, 2002 WL 424649, at *6. Viewed most favorably to the plaintiff, the facts establish a tight temporal sequence between Darboe's absence from work and his demotion. Darboe alleges that he was

first told of his demotion soon after he returned to work on August 1.

### 2. Pretext

The same evidence that Staples produces to articulate a legitimate, non-discriminatory reason for Darboe's demotion in the context of Section 1981—in particular, the May 26 evaluation—is also sufficient to shift the burden back to Darboe under FMLA. Thus, the final, dispositive issue is whether Darboe presents sufficient evidence to support his contention that Staples' proffered reasons were merely pretext.

Evidence of pretext " 'may be demonstrated either by presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence,' or by reliance on the evidence comprising the prima facie case, without more." *La-Fond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 174 (2d Cir.1995). Darboe relies primarily on the temporal sequence between the protected FMLA activity and his demotion, which established a "causal connection" in his *prima facie* case. Staples argues that this evidence is insufficient, because "[i]f timing alone were sufficient, any employer who granted an employee leave under the FMLA would thereafter have its hands tied regarding any discipline of that employee." *Bond v. Sterling*, 77 F.Supp.2d 300, 305 (N.D.N.Y.1999). In *Bond v. Sterling*, however, plaintiff's adverse employment action occurred two weeks after she returned from maternity leave, and events occurred during those two weeks that defendant claimed formed the basis for the adverse employment action. *See Bond v. Sterling*, 997 F.Supp. 306, 307–08 (N.D.N.Y.1998) (predecessor case containing discussion of facts).

As to whether plaintiff's evidence is sufficient to defeat Staples' motion for summary judgment, I find the Second Circuit's decision in *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir.)—involving a Title VII retaliation claim—to be instructive. In that case, the court found that two circumstances created a genuine issue of material fact. First, the court noted the "strong temporal correlation" between the adverse employment action and the protected activity. *Id.* at 770. Second, the court found relevant the fact that all of the defendant's evidence regarding a legitimate, non-discriminatory reason for the adverse employment action was generated by the plaintiff's "alleged harassers." *Id.* Here, a very strong temporal correlation exists. And Mullins, who Darboe contends decided to demote him because he took time off to have surgery, generated all of the evidence regarding Darboe's alleged performance deficiencies.

As with Darboe's Section 1981 claim, plaintiff's evidence is extremely thin. Were Darboe's demotion further removed from the time he took sick leave, or were there any evidence of a legitimate non-discriminatory reason other than that Mullins generated, summary judgment in Staples' favor would be warranted. However, "the fundamental maxim remains that on a motion for summary judgment a court 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)). Staples' motion for summary judgment on plaintiff's FMLA claim is denied.

### D. Intentional Infliction of Emotional Distress

A federal court adjudicating a supplemental state law claim applies the choice of law rules of the forum state. *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d

Cir.1989). In tort cases, New York courts apply the law of the state with the most significant interest in the litigation. *See Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521, 620 N.Y.S.2d 310, 311, 644 N.E.2d 1001 (1994), *cited in Sheldon v. PHH Corp.*, 135 F.3d 848, 853 (2d Cir. 1998). In doing so, they distinguish between conduct-regulating rules and loss-allocating rules. *See, e.g., Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 922, 612 N.E.2d 277 (1993). When a conduct-regulating rule is at issue, the law of the place of the tort governs. *Padula*, 84 N.Y.2d at 525, 620 N.Y.S.2d at 311, 644 N.E.2d 1001. The rule against intentional infliction of emotional distress is conduct-regulating, and plaintiff claims the alleged acts occurred in New Jersey. As a result, that state's law applies.

■■■ "To establish an intentional infliction of emotional distress claim under New Jersey law, a plaintiff must show (1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent–A–Center, Inc.*, 173 F.Supp.2d 239, 243 (D.N.J.2001) (citations omitted). To satisfy the second element, defendant's conduct "must be 'so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 544 A.2d 857, 863 (1988) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). New Jersey courts have held that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Griffin v. Tops Appliance City, Inc.*, 337 N.J.Super. 15, 23–24, 766 A.2d 292, 297 (N.J.App.Div.2001) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988), *cert. denied* 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990)).

■■■ The only evidence of defendant's allegedly extreme and outrageous conduct that Darboe offers is Mullins three criticisms of his work—two before his demotion and one after—and plaintiff's allegation that Mullins said to him "Now you're nothing," or "Now you're nobody." These allegations are insufficient to create a genuine issue of material fact. No reasonable jury could find that defendant's conduct was extreme or outrageous given the facts before the court, even as interpreted most favorably for plaintiff.

## III. Conclusion

For the reasons stated above, summary judgment is granted on all of plaintiff's claims except his Section 1981 and FMLA claims.

This is the decision and order of the Court.