Monica **AVILA–BLUM**, Plaintiff,

v.

**CASA DE CAMBIO DELGADO, INC.,**
**Delgado Travel Agency, Inc., and**
**Hector Delgado, Defendants.**

No. 05 CV 6435.

United States District Court,
S.D. New York.

Oct. 16, 2007.

Ronald John Warfield, The Warfield Group, LLP, New York City, for Plaintiff.

Jeffrey A. Mitchell, Meredith Alexis Pennotti, Dreier LLP, Robert Neil Holtzman, Kramer Levin Naftalis & Frankel, LLP, New York City, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Monica Avila–Blum ("Avila–Blum") brought this case against defendants Casa de Cambio Delgado, Inc. ("Casa de Cambio"), Delgado Travel Agency, Inc. ("Delgado Travel"), and Hector Delgado ("Delgado") (collectively, "Defen-

dants") claiming interference and retaliation in violation of the Family and Medical Leave Act of 1993 (the "FMLA"), 29 U.S.C. § 2601 *et seq.*, and sex discrimination and retaliation in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York Executive Law § 290 *et seq.*, and the New York City Human Rights Law, Administrative Code of the City of New York, § 8–101 *et seq.* Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), arguing that Avila–Blum's claims under the FMLA and Title VII are insufficient as a matter of law, and that the Court should not exercise supplemental jurisdiction over Avila–Blum's state claims. On March 30, 2007, the Court denied Defendants' motion and indicated that it would set forth the findings, reasoning and conclusions for its ruling in a subsequent decision and order. For the reasons discussed below, Defendants' motion for summary judgment is DENIED.

## I. *BACKGROUND*[1]

From approximately March, 2001 to November, 2004, Avila–Blum was employed by Casa de Cambio and Delgado Travel.[2] Soon after being hired, Avila–Blum was selected by Delgado to serve as his Executive Administrative Assistant, working just outside of his office. According to Avila–Blum, it was common knowledge among employees that Delgado engaged in sexual

relationships with female employees in his private office. Avila–Blum alleges that during the period of her employment, Delgado regularly ordered Avila–Blum to summon specific female employees to his office, where he would have sexual encounters with them. Avila–Blum states that, on multiple occasions, other female employees told her that they had been sexually harassed by Delgado. Avila–Blum also alleges that Delgado frequently made inappropriate comments to her about her appearance and often subjected her to offensive touching and other unwanted physical contact.

For example, Avila–Blum claims that, on one occasion, Delgado sexually harassed her while holding her captive on a six-hour boat ride. Avila–Blum alleges that, under the pretext of having her deliver important documents to him, Delgado lured her on to a boat, where he touched her breasts and tried to convince her to change into a revealing outfit.

On another occasion, Avila–Blum claims, an intoxicated Delgado called her into his office, made offensive comments about her figure, and attempted to touch her. Avila–Blum reportedly ran out of the office and complained to Gloria Perez ("Perez"), who was in charge of personnel matters at Defendants' office during 2003 and 2004, but Perez indicated that she was powerless to help.

---

1. The factual summary that follows derives primarily from First Amended Complaint; Answer to First Amended Complaint; Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated August 18, 2006; Defendants' Statement Pursuant to Local Rule 56.1; Declaration of Robert M. Holtzman, dated August 18, 2006; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated November 27, 2006; Plaintiff's Response to Defendants' Local Rule 56.1 Statement; Affidavit of Ronald John Warfield, Esq. in Oppo-

sition to Defendants' Motion for Summary Judgment ("Warfield Aff."), dated November 27, 2006; and Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, dated December 22, 2006. Except where specifically referenced, no further citation to these sources will be made.

2. The parties agree that Casa de Cambio and Delgado Travel constitute an integrated employer.

Defendants categorically deny these accusations.

Avila–Blum alleges that she complained of Delgado's behavior to Delgado's daughters, Jeanette Delgado–Savino ("Jeanette") and Linda Delgado ("Linda"), both of whom are officers of Casa de Cambio and Delgado Travel, but that Delgado continued to harass her.

In September, 2004, Avila–Blum's endocrinologist, Dr. Martin Nydick ("Nydick"), diagnosed her with hyperthyroidism and recommended treatment with radioactive iodine ("RAI"). She showed Linda and Perez a copy of Nydick's diagnosis. On October 19, 2004, Avila–Blum requested and was granted permission to miss work on Friday, October 22, 2004 to visit Nydick. At that visit, Nydick advised her that she had to choose between two possible treatment options, RAI treatment or antithyroid medication. Avila–Blum responded that she would let him know her decision. According to Avila–Blum, when she returned to work the following Monday, Delgado screamed at her for having missed work and told her that her job would be in jeopardy if she took additional time off.

Avila–Blum alleges that she informed Linda that she would need the week of November 29 off from work in order to have the RAI treatment, and that shortly thereafter, she made this request to Delgado. Avila–Blum claims that, by letter dated November 17, 2004 (the "November 17 Letter"), she made this request in writing to Delgado and copied Linda, Jeannette, and Perez. Defendants deny having received the November 17 Letter. According to Avila–Blum, Delgado refused her request for leave and told her that she had to choose between her job and her doctor's appointments.

Avila–Blum states that, because of her thyroid condition, she was unable to work on November 26, 2004 and November 28, 2004. She further asserts that she called in sick on both days, speaking with Perez on November 26, 2004 and Gabriella Mora, the Sunday office manager, on November 28, 2004. According to Avila–Blum, she was not permitted to work when she returned to the office on Monday, November 29, 2004 and Tuesday, November 30, 2004, and her employment was terminated on Wednesday, December 1, 2004. Defendants maintain that Avila–Blum was not terminated, but simply stopped coming to work.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994).

### B. *FMLA CLAIMS*

The FMLA provides eligible employees with an entitlement to a total of 12 work-

weeks of leave during any 12–month period because of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). "A plaintiff may raise separate claims under the FMLA for interference' with rights and 'retaliation.'" *McFarlane v. Chao*, No. 04 Civ. 4871, 2007 WL 1017604, *28–29 (S.D.N.Y. Mar. 30, 2007) (*citing Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir.2004)); *see also Sista v. CDC Ixis North Am., Inc.*, 445 F.3d 161, 175–76 (2d Cir.2006).

■ To establish a prima facie case of interference, a plaintiff must demonstrate: "(1) that she is an 'eligible employee' under the FMLA; (2) that defendants constitute an employer under the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) that defendants denied her benefits to which she was entitled by the FMLA." *Roberts v. Ground Handling, Inc.*, 499 F.Supp.2d 340, 351 (S.D.N.Y.2007) (quotations and citations omitted). In this case, there is no dispute that the first two elements are met, but Defendants argue that, even assuming that Avila–Blum's health problems constitute a "serious health condition," she did not provide sufficient notice that she intended to take leave under the FMLA, and that she was not denied any benefits to which she was entitled by the FMLA.

### 1. *Proper Notice*

The FMLA places a duty on the employee to "provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave," unless treatment requires that leave begin in less than 30 days, in which case "the employee shall provide such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B).

■ With respect to Avila–Blum's request to take leave at the end of November, 2004 to undergo RAI treatment, the parties disagree as what notice Avila–Blum provided to Defendants, including whether Defendants were in fact provided with the November 17 Letter. Similar disagreements exist with respect to Avila–Blum's absences from work on November 26, 2004 and November 28, 2004. Defendants deny, for example, that Avila–Blum called in sick on either day. Defendants further argue that even if she did call in sick, such a phone call does not constitute sufficient notice under the FMLA.

Indeed, courts in this District have found that "[m]erely calling in sick ... is insufficient to put a company on notice that an employee is requesting leave that may be eligible under the FMLA." *Brown v. The Pension Boards*, 488 F.Supp.2d 395, 409 (S.D.N.Y.2007) (*citing Slaughter v. Am. Bldg. Maint. Co. of New York*, 64 F.Supp.2d 319, 326 (S.D.N.Y. 1999)). To satisfy the requirements of the FMLA, "[s]ufficient information must be given to the employer ... to provide reasonable notice that the employee requests time off for a serious health condition." *Slaughter*, 64 F.Supp.2d at 325. "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Darboe v. Staples, Inc.*, 243 F.Supp.2d 5, 17 (S.D.N.Y.2003) (*quoting Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir.1998)).

Avila–Blum contends that her calling in sick on both days combined with her communications with Defendants over the sev-

eral months prior to her absence sufficiently put them on notice as to the reason for her need to miss work. The Court finds that genuine issues of material fact exist as to the information that was communicated to Defendants and whether those communications satisfy the FMLA's criteria for reasonable notice.

## 2. *Interference*

■ There is clearly a disputed issue of material fact as to whether Defendants interfered with Avila–Blum's exercise of her rights under the FMLA. The federal regulations promulgated pursuant to the FMLA state, in relevant part: " 'Interfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220; *see also Potenza*, 365 F.3d at 167. Avila–Blum alleges that on at least two occasions, Delgado told her outright that she would be fired if she took a period of leave to undergo treatment for her medical condition. Defendants deny this allegation, and therefore there is a genuine issue of material fact as to whether Defendants refused to authorize FMLA leave and or discouraged Avila–Blum from exercising her right to such leave.

## 3. *Retaliation*

■ Claims of retaliation under the FMLA are evaluated using the burden-shifting analysis enunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Potenza*, 365 F.3d at 168. To establish a prima facie case for retaliation, a plaintiff must show that (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employ-

ment action occurred under circumstances giving rise to an inference of retaliatory intent. *See id.* As discussed above, whether Avila–Blum provided notice as required by the FMLA, and therefore whether she exercised rights protected under the FMLA, is a disputed question of fact. Furthermore, Defendants deny having terminated Avila–Blum, raising a genuine issue of material fact as to whether Avila–Blum suffered an adverse employment action. Assuming Avila–Blum was terminated, the alleged timing of the termination and the alleged statements by Delgado, threatening that Avila–Blum would be fired if she took leave, combine to give rise to an inference of retaliatory intent. Ordinarily, the burden would shift to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. This analysis does not apply here, however, because Defendants deny having terminated Avila–Blum.

## C. *TITLE VII CLAIMS*

### 1. *Statute of Limitations*

Defendants argue that Avila–Blum's Title VII claims should be dismissed as time-barred. "In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days." *Butts v. City of New York Dep't of Hous., Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993); *see* 42 U.S.C. § 2000e–5(e). Avila–Blum's EEOC charge is stamped as received on July 29, 2005. Defendants assert that the claims are time-barred because Avila–Blum does not identify specific instances of discrimination that occurred after October 2, 2004 (300 days prior to July 29, 2005).

■ This argument is without merit. As the Supreme Court has clearly stated:

Hostile environment claims are different in kind from discrete acts. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

*National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). For purposes of the statute of limitations, it does not matter "that some of the component acts of the hostile work environment fall outside the statutory time period." *Id.* at 117, 122 S.Ct. 2061. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* Accordingly, "the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." *Id.* at 118, 122 S.Ct. 2061.

■ In this case, Avila–Blum has alleged that Delgado engaged in a pattern of behavior over the entire period of her employment. Although several of the more egregious episodes described in the complaint are alleged to have occurred prior to October 2, 2004, Avila–Blum also makes a number of allegations relating to regularly-occurring conduct. Avila–Blum claims, for example, that: (1) Delgado "frequently" ordered her to summon specific female employees to his office for sexual encounters (Complaint SI 34); (2) Delgado would "regularly" subject her to unwanted comments regarding her physical attributes, "often" telling her to wear shorter skirts (*id.* ¶ 37); and (3) "[a]lmost on a daily basis, Delgado would create opportunities to touch Avila, 'accidentally' or subtlety [sic] touching her buttocks, pinching her waist, brushing up against her, putting his arm around her, or grazing her arm" (*id.* ¶ 38).

When Avila–Blum was asked at her deposition whether there were any incidents, other than those she had already described, where Delgado physically touched her, she responded: "He *always* touched me. He *always* touched me. That's why I always felt badly. And I felt dirty. And I was so terrified of him that I couldn't tell him don't touch me because you're not touching me right." (Deposition Transcript of Monica Avila–Blum ("Avila–Blum Dep."), dated June 19, 2006, attached as Ex. 13 to Warfield Aff., at 125:19–24 (emphasis added).) Similarly, she stated, "He [Delgado] *always* grabbed me around the waist, my arms. He would take hold of me and walk a little ways with me and I could feel the heat from Mr. Delgado's body with mine and it was completely repugnant to me." (Avila–Blum Dep. at 83:17–22 (emphasis added).) In light of these accusations and viewing all the facts of the record in a light most favorable to the non-moving party, the Court concludes that a reasonable jury could find that a hostile work environment existed at Defendants' offices beyond October 2, 2004. *See Torres v. Pisano,* 116 F.3d 625, 631 (2d Cir.1997).

### 2. *Individual Liability*

■■ Defendants argue that Delgado is not a proper defendant with respect to Avila–Blum's Title VII claims because such claims may only be brought against an employer, not individual defendants. It is generally true that individual defendants with supervisory control may not be held liable under Title VII. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995), *abrogated on other grounds, Burlington v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). However, an individual may be held liable for a violation of Title

VII based on a theory of alter ego. *See Barbezat v. Arnell Group, Ltd.,* No. 96 Civ. 9790, 1997 WL 473484, *1 (S.D.N.Y. Aug. 19, 1997); *Leykis v. NYP Holdings, Inc.,* 899 F.Supp. 986, 991 (E.D.N.Y.1995); *cf. Lane v. Maryhaven Center of Hope,* 944 F.Supp. 158, 163 (E.D.N.Y.1996) (applying alter ego theory to Americans with Disabilities Act claim). "To establish alter ego liability it is necessary to show that the individual defendant exercised such complete dominion and control that the corporation lacked independent will and that this control was used to 'commit fraud or wrong' against the plaintiffs." *Barbezat,* 1997 WL 473484, at *1. In this case, Avila–Blum's deposition testimony indicates that Delgado maintained complete control over the operation of the corporations and used his control to create a hostile work environment for her. Avila–Blum further claims that because of Delgado's control, her attempts to rectify her situation were futile. For example, she states that when she complained to Jeanette of Delgado's treatment, Jeanette responded, "I don't know what to say to you because you know that my father makes all the decisions around here." (Avila–Blum Dep. 86:12–15.) Viewing all the facts of the record in a light most favorable to the non-moving party, a reasonable jury could find Delgado individually liable for violations of Title VII on an alter ego theory.

### D. *STATE AND CITY HUMAN RIGHTS LAW CLAIMS*

Finally, Defendants assert that, if the Court dismisses Avila–Blum's Title VII claims, it should decline to exercise supplemental jurisdiction over Avila–Blum's claims under the state and city discrimination statutes. Because the Court has determined that the Title VII claims should not be dismissed, exercising supplemental jurisdiction over Avila–Blum's state and city law claims, pursuant to 28 U.S.C. 1367(a), is appropriate.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that·the Court's Order dated March 30, 2007 is amended to incorporate the discussion above; and it is further

**ORDERED** that the motion for summary judgment (Docket No. 28) of defendants Casa de Cambio Delgado, Inc, Delgado Travel Agency, Inc., and Hector Delgado is DENIED; and it is further

**ORDERED** that a final pretrial conference is scheduled in this matter for October 26, 2007 at 11:00 a.m.

**SO ORDERED.**